IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 NOV 18  AM 10: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CHARLES CRAWFORD, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] CV-02-BE-1741-S |
| | ] |
| ORKIN EXTERMINATING | ] |
| COMPANY, et al. | ] |
| | ] |
| Defendants. | ] |

ENTERED
NOV 18 2002

## MEMORANDUM OPINION

This case is before the court on Defendant Orkin Exterminating Company, Inc.'s Motion to Dismiss (Doc. 2). Because matters outside the pleading have been presented to the court by defendants and plaintiff, the court treats Defendant's Motion to Dismiss as a Motion for Summary Judgment in accordance with Rule 12(b) of the Federal Rules of Civil Procedure. After reviewing the briefs and evidentiary submissions submitted by counsel, the court has determined that Defendant's Motion for Summary Judgment is due to be granted regarding plaintiff's fraud and bad faith claims and denied regarding plaintiff's breach of contract claim. In addition, the court has determined that all claims against Thomas J. Cafiero in his individual capacity are due to be dismissed without prejudice.

**A. Statement of the Case**

Plaintiff entered into a Subterranean Termite Agreement with Orkin Exterminating Company, Inc. ("Orkin") on March 9, 1979. Plaintiff renewed this contract annually. On or around November, 2001, plaintiff contacted Orkin's Birmingham, Alabama branch office to

7

report termite damage at plaintiff's residence. Thomas Cafeiro, an Orkin employee, inspected plaintiff's house for termite damage on November 12, 2001. Mr. Cafeiro sent plaintiff a letter on November 19, 2001, advising plaintiff that he was not entitled to any repairs or remuneration for two reasons. First, Mr. Cafeiro advised plaintiff that "[t]he inspection revealed an area of moisture damage located to [sic] the base of the two columns located on the right side of the front porch. Retreatment of this area will not be necessary as termites were not found during the November 12, 2001 inspection." Pl. Response, Ex. C. Second, Mr. Cafeiro advised plaintiff that "the original guarantee provided for retreatment only, upon reinfestation of termites. This coverage does not provide for repairs that may result from a reinfestation." Id. Mr. Cafeiro further stated that "the service agreement provided to you at the time of purchase clearly states the type of guarantee purchased, [sic] was a lifetime Re-treatment guarantee." Id.

Plaintiff filed this case on February 28, 2002, in the Circuit Court for Jefferson County alleging breach of contract, bad faith, and fraud claims against Thomas Cafierro and Orkin. Orkin removed this case to federal court on July 17, 2002 on diversity grounds. Orkin filed the Motion to Dismiss that is before this court on July 17, 2002.

**B. Legal Standard**

Rule 12(b) requires that if a party files a motion to dismiss for failure to state a claim upon which relief can be granted and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56". Because both defendants and plaintiff submitted exhibits to the court, the court treats defendants' Motion to Dismiss as a Motion for Summary Judgment. When a district court reviews a motion for summary judgment under Rule 56 of the Federal Rules of

Civil Procedure, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing either genuine issues of material fact or that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Substantive law determines which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson*, 477 U.S. at 249. Material facts affect the outcome of the trial under governing law. 477 U.S. at 248. To determine whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 249; *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002); *Witter v. Delta Airlines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must grant the motion <u>if</u> no genuine issues of material fact exist <u>and if</u> the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the

court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, or make determinations as to the credibility of witnesses because these decisions fall to the provence of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

**C. Discussion**

Plaintiff alleges three distinct claims against Orkin and Thomas Cafiero. First, plaintiff alleges that defendants breached a "contract of insurance" with plaintiff "by failing to pay his claim which was a covered loss under the policy, and have further breached the contract by denying that the Plaintiff has said coverage." Second, plaintiff alleges that defendants' "intentional and willful refusal to pay the claim without any arguable reason constitutes a bad faith refusal to pay a just claim." Finally, plaintiff alleges that defendants committed fraud by misleading plaintiff that the coverage plaintiff purchased from Orkin would provide plaintiff with lifetime repair coverage in the event his home was damaged by termites. Plaintiff alleges that he paid for structural repair coverage on March 9, 1979, and that he was "fraudulently mislead [sic] as to the existence of said contract."

### 1. Breach of Contract

Plaintiff alleges that he purchased a Subterranean Termite Agreement with Orkin on March 9, 1979, that included coverage for any structural damage to plaintiff's house resulting from a termite infestation. Plaintiff's complaint states that defendants breached a "contract of insurance" by failing to pay plaintiff's claim for termite damage to his house. Plaintiff apparently did enter into a contract with Orkin to provide termite coverage. However, this contract was not an insurance contract because it fails to meet the requirements of Alabama Code § 27-1-2 that defines "insurance" as "[a] contract whereby one undertakes to indemnify another or pay or provide a specified amount or benefit upon determinable contingencies." *See Hicks v. Alabama Pest Services*, 548 So. 2d 148, 150 (Ala. 1989) (finding that homeowner did not have an insurance contract with defendant termite company).

Plaintiff submitted to the court the front page of the Subterranean Termite Agreement and argued that this document shows that plaintiff paid $414.00 for "Structural Repairs" as shown in Line 1(b) of the contract. Pl. Response, Ex. A. Orkin does not address the charge for structural repairs on the contract. Instead, Orkin argues that the front of the contract is clearly marked as a "Lifetime Re-Treatment" Guarantee and that the back of the contract specifically defines the coverage limitations of a Lifetime Re-Treatment Guarantee.

The court recognizes that the front of the contract denotes it as a Lifetime Re-treatment Guarantee and that the definition of Life-Time Retreatment Guarantee specifically limits Orkin's liability to re-treatment only. The back of the contract clearly states that "[t]he buyer expressly waives, and releases Orkin from liability for, any claim for damages to the structure or its contents occasioned by an infestation of subterranean termites." Def. Ex. A. However, the court

finds that the $414.00 charge for "Structural Repairs" in Line 1(b) of the contract creates a genuine issue of material fact at this time as to the exact coverage created by the contract. The contract also has a place to mark the type of contract purchased on the front of the document. Therefore, a possible ambiguity exists on the face of the contract as to whether the plaintiff purchased a contract for "Structural Repairs" as noted in Line 1(b) or whether plaintiff purchased a Life-Time Retreatment Guarantee contract that does not cover structural repairs. Therefore, the court denies Defendant' Motion for Summary Judgment on plaintiff's breach of contract claim.

### 2. Bad Faith

Plaintiff alleges that Orkin acted in bad faith by failing to pay plaintiff's claims for repairs to his house. A plaintiff in a bad faith refusal case has the burden of proving (1) <u>an insurance contract</u> between the parties and a breach thereof by the defendant; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason; and (4) if intentional failure to determine the existence of lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to pay the claim. *National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

Plaintiff's bad faith claim fails as a matter of law because the contract at issue in this case is a termite contract and not an insurance contract. In *Hicks v. Alabama Pest Services, Inc.*, 548 So. 2d 148, 150 (Ala. 1989), the Alabama Supreme Court affirmed the trial court's entry of summary judgment in favor of a pest control company on plaintiff's bad faith claim. The Alabama Supreme Court found no cause of action was available against the pest control company

for bad faith in a dispute over a termite contract because the termite contract was not an insurance contract. 548 So. 2d at 150. Therefore, because the contract at issue in this case is a termite contract and not an insurance contract, plaintiff is precluded as a matter of law from asserting a bad faith claim against defendants. Thus, Orkin's Motion for Summary Judgment on plaintiff's bad faith claim is due to be granted.

### 3. Fraud

Plaintiff alleges that defendants committed fraud by inducing plaintiff to enter into a termite contract by fraudulently representing to plaintiff that the contract provided him lifetime repair coverage in the event plaintiff's home was damaged by termites. Plaintiff further alleges that he paid for structural repair coverage on March 9, 1979, and that defendants have fraudulently made misrepresentations concerning the termite contract. Defendants argue that because plaintiff's fraud claim is based upon a contract that was signed on March 9, 1979, plaintiff's fraud claim is extinguished by the rule of repose.

In *Moore v. Liberty National Insurance Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000), *aff'd*, 267 F.3d 1209 (11th Cir. 2001), a district court applied the rule of repose to dismiss with prejudice plaintiffs' state law fraud claims against an insurance company because "the events giving rise to those claims occurred more than twenty years in the past." The court explained that "the rule of repose is a judicially-created doctrine that provides the outer limits of time within which an action may be maintained, regardless of whether that action is barred by the statute of limitations." 108 F. Supp. 2d at 1275 (citing *Barrett v. Wedgeworth*, 518 So. 2d 1256, 1257 (Ala. 1987)). The court further stated that "[a]pplication of the rule of repose has only one element--the passage of twenty years from the moment that the actions giving rise to the claim

occurred--and, if that time has elapsed, no claim can be pursued." 108 F. Supp. 2d at 1275.

In the instant case, plaintiff alleges that he was defrauded in 1979 when Orkin allegedly represented to plaintiff that his termite contract provided for the repair of structural damage to plaintiff's house. Similar to the fraud claims dismissed by the district court in *Moore v. Liberty National Insurance Co.*, plaintiff's fraud claim arose at the time the alleged representations concerning the contract were made. Because the contract allegedly giving rise to plaintiff's fraud claim was entered into on March 9, 1979, more than twenty years passed before plaintiff filed this lawsuit on February 28, 2002. Thus, plaintiff's fraud claim against defendants is subject to the rule of repose and must be dismissed as a matter of law. Orkin's Motion for Summary Judgment on plaintiff's fraud claim is due to be granted.

### 4. Dismissal of All Claims Against Defendant Thomas Cafiero

The court, *sua sponte*, dismisses all claims against Thomas Cafiero in his individual capacity. As discussed above, plaintiff's bad faith and fraud claims against Mr. Cafiero are subject to dismissal as a matter of law. However, the court finds that dismissing the remaining breach of contract claim against Mr. Cafiero is also necessary . In its Motion to Dismiss, Orkin included an affidavit of Thomas J. Cafiero that stated that he was not employed by Orkin in March, 1979. Motion to Dismiss, Ex. A. Therefore, Mr. Cafiero was not a party to the contract signed by plaintiff and Orkin on March 9, 1979. The court assumes that Mr. Cafiero was named as a defendant in this lawsuit because he is currently an Orkin employee and inspected plaintiff's house in November, 2001. This relationship is insufficient as a matter of law to establish that Mr. Cafiero, in his individual capacity, breached a contract with plaintiff. Plaintiff has provided no evidence that Mr. Cafiero entered into a contract with plaintiff and therefore the court dismisses

all claims against Mr. Cafiero without prejudice.

For the above reasons, summary judgment is due to be granted in favor of Defendant Orkin and Defendant Thomas J. Cafiero on plaintiff's bad faith and fraud claims. In addition, the court dismisses without prejudice plaintiff's breach of contract claim against Defendant Thomas J. Cafiero. These rulings will be issued by a separate order.

DONE and ORDERED this /5th day of November, 2002.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE